UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE PENA MALDONADO,

        Petitioner,

v.

                                      CASE NO. 6:09-cv-1701-Orl-28GJK
                                           (6:07-cr-40-Orl-28GJK)

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) filed by Jose Pena Maldonado. The Government filed a response (Doc. No. 8) to the section 2255 motion in compliance with this Court's instructions and with *The Rules Governing Section 2255 Proceedings for the United States District Courts*. Petitioner was given an opportunity to file a reply to the Government's response but did not do so.

Petitioner alleges three claims for relief, counsel rendered ineffective assistance by (1) coercing Petitioner into entering a plea by advising him that he would receive a sentence of sixty months based on the application of the "safety valve"[1] and failing to request that the safety valve provision be applied; (2) advising Petitioner that there were no legal defenses available to the charges and that Petitioner would be sentenced to a mandatory term of twenty-five years if he proceeded to trial, and (3) failing to advise

_____

[1]*See* 18 U.S.C. § 3553(f).

Petitioner that he could not be convicted for conspiracy because the conspiracy was between Government agents and Petitioner. For the following reasons, Petitioner's § 2255 motion is denied.

## I.      *Procedural History*

Petitioner was charged by indictment with conspiring to possess with intent to distribute five or more kilograms of cocaine hydrochloride and a quantity of marijuana (count one), possession with intent to distribute marijuana (count two), and using a firearm and carrying firearms during and in relation to counts one and two while aiding and abetting (Criminal Case No. 6:07-cr-40-Orl-28GJK, Doc. No. 8).[2] On May 2, 2008, Petitioner entered a plea of guilty to counts one and three before Magistrate Judge David A. Baker. *Id.* at Doc. No. 81.   Magistrate Judge Baker filed a Report and Recommendation, recommending that the plea be accepted and that Petitioner be adjudicated guilty. *Id.* at Doc. No. 67. This Court accepted the plea and adjudicated Petitioner guilty. *Id.* at Doc. No. 73. The Court sentenced Petitioner to a 120-month term of imprisonment on count one and a sixty month term of imprisonment on count three, to run consecutively. *Id.* at Doc. No. 76. Petitioner appealed his sentences, and the Eleventh Circuit Court of Appeals affirmed. *Id.* at Doc. No. 91.

## II.     *Legal Standard*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief

---

[2]Criminal Case No. 6:07-cr-40-Orl-28GJK will be referred to as "Criminal Case."

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those

rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.   *Analysis*

   A.   *Claim One*

Petitioner asserts that counsel rendered ineffective assistance by coercing him into entering a plea by (1) advising him that he would receive a sentence of sixty months based on the application of the "safety valve" and (2) failing to request that the safety valve provision be applied.  In support of claim one, Petitioner contends that counsel told him that an off-the-record promise had been made by the Government that Petitioner would receive a sentence of sixty months imprisonment followed by three years of supervised release. (Doc. No. 1-2 at 7.)  Petitioner further alleges that counsel advised him that the Court would impose a sentence of fifteen years with a ten-year minimum mandatory if he proceeded to trial and lost.  *Id.*  Finally, Petitioner maintains that counsel did not advise him of the maximum term of imprisonment he could receive and did not object to the Court's failure to advise Petitioner he would be subject to supervised release. *Id.* at 8-9.

In response to Petitioner's motion, Petitioner's trial counsel, Mark Reyes ("Reyes"), filed an affidavit. (Criminal Case Doc. No. 94.)  In his affidavit, Reyes attests that he filed a motion to withdraw as counsel because Petitioner refused to cooperate with him. *Id.* at 1-2.  Reyes avers that he met with Petitioner immediately after the Friday, May 2, 2008, hearing on the motion to withdraw, which was denied.  *Id.* at 2.  Reyes attests that

Petitioner told him at that time that he did not want to proceed to trial and insisted on entering a plea. *Id.* Reyes states that Petitioner pled guilty without a plea agreement because the trial was scheduled to begin on Monday, May 5, 2008, and in order to allow Petitioner to appeal or collaterally attack his sentence if he wanted to do so. *Id.* Finally, Reyes attests that the safety valve provision was not available to Petitioner because the issues of violence and whether Petitioner was a leader in the offenses may have been contested and Petitioner refused to speak with the Government as required by 18 U.S.C. § 3553(f)(5). *Id.* at 2-3.

Reyes also filed a copy of a letter dated April 21, 2008, wherein Reyes advised Petitioner of the potential sentences he faced if he entered a plea or proceeded to trial. (Criminal Case Doc. No. 94 at 4-7.) In the letter, Reyes advises Petitioner that if he proceeds to trial and is found guilty, he could be subject to a sentence of 188 to 293 months (15.7 to 24.4 years). *Id.* at 5. Petitioner did not file a reply to the Government's response or to Reyes' affidavit.

The Eleventh Circuit Court of Appeals has held "a district court ordinarily should not resolve a disputed factual issue in a habeas proceeding based solely on an affidavit." *Alvarez-Sanchez v. United States,* 350 F. App'x 421, 424 (11th Cir. 2009). However, "[w]here the affidavits are supported by other evidence in the record the court may rely upon them." *Owens v. United States,* 551 F.2d 1053, 1054 (5th Cir. 1977).[3]

---

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

In the instant case, many of Reyes' representations in the affidavit are supported by Petitioner's own representations to the Court during the plea hearing. Furthermore, the plea colloquy refutes most of Petitioner's allegations. During the plea hearing, the following colloquy occurred:

> The Court: Do you understand you have a right to maintain your plea of not guilty and to go to trial on these charges? Do you understand that? You're not required to plead guilty here.

> Petitioner: Yes, I do understand, but I am guilty.

> The Court: All right. *Has anybody promised you anything other than dismissal of Count 2, or given you any kind of -- other kind of inducements to get you to plead guilty to Counts 1 and 3 here?*

> Petitioner: *No.*

> The Court: Has anybody done anything that you consider to be wrong or unfair to get you to plead guilty to these two charges?

> Petitioner: No.

> The Court: Have there been any threats or coercion or improper pressure of any kind placed on you to get you to plead guilty?

> Petitioner: No.

> The Court: Do you want to plead guilty to these two charges because you are guilty, or is there some other reasons that you want to plead guilty?

> Petitioner: Because I am guilty.

> The Court: *Now, let me advise you as to the maximum penalties that you are facing under these charges. This is not your actual sentence, but the most that can be imposed by the district judge. Count 1 carries a mandatory minimum term of ten years in prison and up to life. You could be fined up to $4 million and you'd be ordered to serve a term of supervised release of five years. You also would be ordered to pay*

*a special assessment of $100 due at the time of sentencing. Count 3 carries a mandatory minimum term of five years up to life, and that five years or more would be consecutive to the term in Count 1. You could also be fined up to $250,000. You'd have a term of supervised release of up to five years, and you would also be ordered to make the $100 special assessment on that count.*

*Now, your actual sentence will be determined by the district judge in a separate hearing. . . .*

*In any event, there'll be a final sentencing hearing. That's really the first time that you're going to know what your sentence will be, because it's at that hearing that the district judge will consider that report and allow you to make a statement. He'll hear from the attorneys and then he'll decide how the sentencing statutes and guidelines apply to you and your case.*

*He'll decide whether to use the guidelines, whether to depart from them, or to use some other basis to determine your sentence.*

The district judge will take into account a great many factors, including your actual conduct here, any victim of your offense, your role, any obstruction of justice that may have occurred, your acceptance of responsibility, the amount of drugs involved and your criminal history, if you have any. All those things, and other factors as well, will be considered by the court.

*Do you understand that?*

Petitioner:     *Yes.*

The Court:     *Now, again, I want to emphasize that because all of that has to happen, you are not going to know today what your sentence will be, and if it's worse for you than you're hoping or than the attorneys may have talked to you about, it could be more than the government asked for, because it will be the district judge's decision, but you're going to be bound by what the district judge does. You won't be able to withdraw your guilty plea because it's worse for you than you're hoping for. Do you understand that?*

Petitioner:     *Uh-huh.*

7

The Court:   You need to answer out loud.

Petitioner:   Yes.

\* \* \*

The Court:   *Supervised release is a period of time that would follow imprisonment. During that time you'd be on release but under the supervision of a probation officer, subject to a great many conditions. And if you were to violate your conditions, you could be sent back to prison. Do you understand that?*

Petitioner:   *Yes.*

Criminal Case Doc. No. 81 at 8-12 (emphasis added). Thus, contrary to Petitioner's assertions in claim one, when asked at the plea hearing if anyone had promised him anything other than to dismiss count two in order to get him to plead guilty to counts one and three, Petitioner responded negatively. Likewise, the Court advised Petitioner about the maximum sentences he faced and about supervised release. After being advised by Magistrate Judge Baker that his sentence would be determined by the undersigned in a separate hearing and that he would not be able to withdraw his plea if his sentence was greater than what his attorney had advised him, Petitioner indicated that he understood. Petitioner's representations constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Moreover, to the extent Petitioner's alleges in claim one that counsel told him that he would be subject to a fifteen-year sentence if he proceeded to trial and was found guilty, the Court notes that counts one and three carried mandatory minimum sentences of ten

and five years respectively.  As such, counsel's advice was not erroneous.  Likewise,

Petitioner has not established either deficient performance or prejudice based on counsel's

failure to request application of the safety valve.[4]  The record reflects that Petitioner pled

_____

[4]The "safety valve" provision, found in 18 U.S.C. § 3553, provides in pertinent part:

> [T]he court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

guilty to using a firearm and carrying firearms during and in relation to a drug trafficking offense while aiding and abetting.   Moreover, during the sentencing hearing, the Government noted that Petitioner had refused to cooperate with law enforcement. (Criminal Case Doc. No. 85 at 11.) Thus, at least one, if not more, of the requirements for application of the safety valve were not met in Petitioner's case.   In sum, Petitioner has failed to demonstrate in claim one that counsel's performance was deficient or that a reasonable probability exists that Petitioner would not have entered a plea absent counsel's alleged deficient performance.

### B.    Claim Two

Petitioner asserts that counsel rendered ineffective assistance by advising him that there were no legal defenses available to the charges and that he would be sentenced to a mandatory term of twenty-five years if he proceeded to trial.  (Doc. No. 1 at 6.)  In support of this claim, Petitioner does not specify any defenses of which counsel failed to apprise him or which are applicable to his case.  However, in claim three, Petitioner maintains that counsel failed to advise him that he could not be convicted for conspiracy to possess with intent to distribute five or more kilograms of cocaine hydrochloride and a quantity of marijuana (count one) as the conspiracy was between Government agents and Petitioner. The Court, therefore, will address this argument in claim three.

To the extent Petitioner generally alleges in claim two that counsel erroneously advised him that there were no legal defenses available to the charges, the Court concludes

---

18 U.S.C. § 3553(f)(1)-(5) (2007).

that this claim is vague and inadequate as a matter of law to state a cognizable claim of

ineffective assistance of counsel.

> A convicted defendant making a claim of ineffective assistance must identify
> the acts or omissions of counsel that are alleged not to have been the result
> of reasonable professional judgment.   The court must then determine
> whether, in light of all the circumstances, the identified acts or omissions
> were outside the wide range of professionally competent assistance.

*Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Petitioner does not identify in claim two

any defenses which were applicable to the charges against Petitioner.  In other words,

Petitioner has not demonstrated that counsel's purported advice or lack of advice was

unreasonable.

Turning to Petitioner's contention in claim two regarding counsel's advice about the

sentence Petitioner would receive if he proceeded to trial and lost, the Court notes that

Petitioner's own allegations in his Section 2255 motion and memorandum of law are

contradictory.  In claim two, Petitioner asserts that counsel told him he would receive a

mandatory sentence of twenty-five years if he proceeded to trial and lost.  However, in his

memorandum, Petitioner maintains counsel told him that the Court would impose a

sentence of fifteen years with a ten-year minimum mandatory if he proceeded to trial and

lost.  Petitioner's own statement refutes this portion of claim two.  Furthermore, as noted

*supra,* trial counsel submitted a letter that he attests was given to Petitioner, which advises

Petitioner that if he proceeds to trial and is found guilty, he could be subject to 188 to 293

months (15.7 to 24.4 years).  No where in the letter does counsel advise Petitioner that he

would be subject to a twenty-five year mandatory sentence.  Thus, in light of Petitioner's

contradictory representations and counsel's representations, the Court cannot conclude that counsel rendered deficient performance or that Petitioner was prejudiced. Accordingly, claim two is denied.

### C.    Claim Three

Petitioner maintains that counsel rendered ineffective assistance by failing to argue that the conspiracy was between a himself and a confidential informant, who was a government agent.  In support of this claim, Petitioner argues that there was no evidence that he conspired to possess a controlled substance and guns because Petitioner only spoke with a government agent about the drugs and guns.  (Doc. No. 1-2 at 10.)

Petitioner and Zabdel J. Santiago Balaguer ("Balaguer") were indicted of conspiracy to possess with intent to distribute five or more kilograms of cocaine hydrochloride and a quantity of marijuana (count one), possession with intent to distribute marijuana (count two), and using a firearm and carrying firearms during and in relation to counts one and two while aiding and abetting (count three).  On June 6, 2007, Balaguer entered a plea to counts one and three pursuant to a plea agreement.  (Criminal Case Doc. No. 28.)  The factual basis in Balaguer's plea agreement provided that Petitioner, who served as Balaguer's cocaine supplier, met with Balaguer and an undercover agent and discussed shipping guns and marijuana to Puerto Rico and obtaining cocaine from Puerto Rico.  *Id.* at Doc. No. 27 at 17.  The plea agreement further indicated that Thomas Anthony Munoz ("Munoz") was arrested when he deplaned in Puerto Rico from a flight leaving from Orlando, Florida, on March 5, 2007, because he was carrying fourteen firearms and eight

pounds of marijuana inside of the aircraft. *Id.* Munoz told agents that the contraband belonged to Balaguer and Munoz was taking it to Petitioner. *Id.*

On September 23, 2008, after Balaguer entered his plea, Petitioner entered a plea to counts one and three. During the plea hearing, the following colloquy occurred:

> The Court: All right. Mr. Maldonado, tell me, in your words, with the help of the interpreter, what you understand to be the charges against you, and tell me what it is that you did.
>
> Petitioner: Well, I would send money to Zabdiel [sic] Santiago for him to buy weapons, and for him to transfer them to Puerto Rico.
> In Puerto Rico they would be stored and they would be transferred, the [sic] would be sold to different people. After that the money was taken and it would be sent through Western Union to Satiel Santiago.
>
> Then after that, when the money would arrive there, we would buy marijuana. Then the marijuana was transported to Puerto Rico. It arrived in Puerto Rico, it would be stored and sold to different people. That would be the process that would take place between weapons and marijuana.
>
> Then he told me that he had met two people that were undercover agents and he decided to sell the weapons to that person, because it was easier, instead of taking them to Puerto Rico, to sell them here.
>
> Then he continued communication with the undercover agents. That's when the encounter of the super bowl occurred. I was invited to go there. I agreed to go and I got involved through Zabdiel [sic] Santiago, who knew the people. And after that we talked about cocaine, that 2 to 3 kilos were going to be brought here to the United States and they were going to be sold to the undercover agents. And then the problem that exists now today, that's when it occurred.
>
> * * *
>
> The Court: I'm wondering whether there was discussion of any

13

more cocaine than the 2 or 3 kilograms.

Mr. Citro:          Your Honor, it may help jog the defendant's memory that we've turned over recorded conversation where there was discussion between 7 to 8 kilograms.

Petitioner:   Yes.

The Court:   That's correct?

Petitioner:   Yes.

\* \* \*

The Court:          All right. Mr. Maldonado, talking with Mr. Citro about the firearms, you acknowledge that Mr. Munois [sic] was bringing these 14 firearms back to Florida -- I mean to Puerto Rico --

Petitioner:    Yes.

The Court:    -- as a part of your transaction?

Petitioner:   Yes.

The Court:   And you were working with him on that?

Petitioner:   Yes.

(Criminal Case Doc. No. 81 at 16-19.) Thus, Balaguer, Petitioner's co-defendant, pled guilty

to counts one and three of the indictment and could have testified against Petitioner

concerning the charges. Furthermore, Petitioner admitted that he conspired with Balaguer

and Munoz, neither of whom are alleged to be government agents.  As such, counsel was

not deficient for failing to advise Petitioner, or to argue that, the conspiracy was only

between a government agent and Petitioner because evidence existed that Petitioner

conspired with non-government agents.  Additionally, Petitioner has not demonstrated

that a reasonable probability exists that he would not have pled guilty and proceeded to trial had counsel advised him of, or argued, this defense, given that the record demonstrates that there was sufficient evidence to prove otherwise. Accordingly, claim three is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:07-cr-40-Orl-28GJK and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Criminal Case Doc. No. 92) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a

constitutional right.[5]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE   AND   ORDERED**   in   Orlando,   Florida,   this   _J 1_  day   of

_____, 2011.

_____
JOHN ANTOON II
UNITED STATES DISTRICT JUDGE


Copies to:
OrlP-1 5/31
Jose Pena Maldonado
Counsel of Record

---

[5]Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.